The opinion of the Court was delivered by
Mr. Justice Grimke.
After the conclusion of the revolutionary war, the independence of this country being esta *357 Wished, the Legislature, in 1784, directed the land office to be opened, and all the vacant lands in the state to be granted. Every citizen had a right to run out, in any one survey, as much he pleased, nor was this practice deemed illegal by the Legislature, until the May session of 1794, when they closed the land office for four years, excepting that in that period any one person might obtain one grant of 500 acres, and no more. But this grant was made in 1787, long before this restrictive act passed; so that it could, in no wise operate upon any grants made previous to that date. Indeed, so far was the Legislature from considering the grants which covered very large bodies of land as void, that they directed, in the acts of 1785, 1787,1791,1792, and 1794, thatif persons do not take out their grants from the surveyor general’s office, the same shall be sold for the benefit of the public; and if it should be sold for more money than the1 purchase money thereof, and interest, with the expenses of the sale, from the date of the grant, the treasurers shall pay such surplus to the grantee, or his heirs; thereby recognising, in its fullest extent, the validity of such grants: and this is further confirmed by the act of Assembly of 1794, which provides, that nothing contained in this act shall be construed to authorize the taking out of grants for the excessive surveys of land made since the 1st of April, 1791, but it is silent as to those which were made before that period. It *358 is further provided, by act of Assembly of March, 1787, that no grants already obtained shall be delivered by the secretary to the owner thereof, until the purchase money be paid into the public treasury; and that all grants hereafter to be obtained shall be deemed forfeited to the state, if the purchase money be not paid within six months after the passing of the said grants. It will be readily admitted that the last section pi this clause cannot apply to this grant, as it had passed the office previously to the ratifying of this act. The forfeiture, therefore, does not accrue on the non-payment within six months, but the grantee is still left at liberty to take out his grant, whenever he pays the purchase money; for no time is limited. By the act of 1791, the Legislature again opened the door, and permitted the citizens to take out grants for any number of acres, without limitation, and without any payment ; for the purpose, as they declare, of deriving an advantage to the state by the payment of taxes thereon, and which they say will be lost to the state if the vacant lands remain ungraiited. And in a subsequent section they again recognise the validity of those grants, which they say contain many thousand acres, by giving the grantees the right of redemption of such grants as still remain in the office, at the rate of 1 dollar for every hundred acres; so that the purchase money of this grant, if it remained in the office *359 after this period, as testified by Mr. Bremar, would have cost the grantee but 100 dollars.
„ It has been ingeniously argued, that the clause of the act of 1794 makes this grant void; for it enacts, that where any warrants have been issued previous to the passing of this act, if any deputy surveyor, in locating them, shall knowingly and wilfully comprehend, within the limits of any such location, any plantation or tract of land before granted, without noting the same; and if the same warrants shall be hereafter carried into grants, where there are any grants for land now actually made out, signed, and ready to be delivered, which plats or grants comprehends, within respective limits, any plantation or tract of land before granted, without the same being marked and noted, it shall be lawful for any proprietors of the plantation or tract of land so before granted, or any other person interested therein, to bring his action of trespass against the grantee of the subsequent grant, which comprehends the prior one, or any part thereof, his heirs or assigns, or any or all of them; and on his substantiating by proof, to any disinterested Court and Jury, within whose jurisdiction the land lies, that his land, or part thereof, is actually comprehended in the subsequent, a verdict shall be found in his favour, and the Court shall declare the subsequent grant, and every part thereof, to be fraudulent and void to all intents and purposes.
*360 The first requisition of this act is, that the de- * puty surveyor, shall knowingly and wilfully comprebend, within bis survey, any tract, or part thereof, before granted, &c. but on the trial no such proof was given; it was highly presumable, indeed, that in such an extent of land as 10,000 acres, there were some plantations or tracts of land formerly granted; but we must not go on presumptions, particularly when the act makes it an indispensable and legal circumstance to be proved, and when an individual is to be disseized of his freehold under such proof; and although from the plat of resurvey, a number of plantations, and tracts of land, are there represented as included in the plain tiff’s survey, yet there was no proof that any of them were settled in 1787, when the plaintiff run out his land, and, therefore, if they were only in woods, they were most likely to be unknown, or unobserved by thé deputy surveyor.
The second point which I shall observe upon in this clause is, that the present defendant was authorized to bring his action against the present plaintiff; if he had had any wish or intention of avoiding the present plaintiff’s grant; instead of which, he has submitted quietly to the claim of the plaintiff, from the year 1787 to the year 1800, when he took out a grant which lies within the boundaries of this great survey: has he not then waived his right, after permitting the plaintiff to remain in undisturbed possession for *361 thirteen or fourteen years, of receiving any benefit under this act, as he never brought his action against it; he has, therefore, not pursued the directions of the act to nullify this grant, and therefore it must still be considered as good and valid.
If then the plaintiff’s grant is good, he must have the benefit of this act which the defendant has adduced in his favour. Now it appears that the defendant ran out an additional tract to his own old tract within the limits of the plaintiff’s big survey; how then can the grant of the defendant, for this additional tract be valid, until the plaintiff’s grant be avoided ? he must fail in establishing the legality of his additional grant by the very law by which he insists on the invalidity of plaintiff’s grant; for if the plaintiff’s grant, by taking in his (defendant’s) plantation, is void, so must his (the defendant’s) also be void, since it is comprehended within the boundaries of the plaintiff’s land; for the act says, that if the plaintiff prove that his land, or any part thereof, is actually comprehended in the subsequent grant, a verdict shall be found for the plaintiff The plaintiff’s grant had not been declared null and void, but, on the contrary, had been repeatedly recognised by the Legislature as a legal grant, though so long remaining in the public office, .and he did prove that defendant had actually run out part of his tract. But the plaintiff’s does not rest on this alone, for it is sup *362 ported by the Common Law of the land, which r . . makes- every junior grant of course null and void. The defendant then, I say, not having proved what is provided to be proved by this act, and not having brought his action to set aside the grant of the plaintiff, and plaintiff being in possession of the grant, and of the .and, as proved by the witnesses, it is impossible for him to prevail in the defence he has set up. By the act of Assembly, of 1784, the governor, and five of the privy council, had a right of hearing and determining caveats-, and when the council ivas abolished, the same power was vested in three commissioners. If then the defendant had found himself aggrieved by the running of so large a tract of land as 10,000 acres, why did be not apply to this tribunal, which had been erected for the express purpose of giving relief in such cases in the first instance, and have prevented the plaintiff from obtaining a grant therefor ? No one who will inspect the plat of the plaintiff, but must be convinced that it was not done at night, or in a private manner; the line trees are so numerous, and the courses so straight, that it is impossible it could have been done so privately but that some of the persons, whose plantations are includedwithin the lines, must have known of the survey —Vigilantibus et non dormientibus subveniunf leges. If, therefore, these persons who complain of being thus aggrieved, did not resist so large a survey in limine, as inimical to their rights, under the caveat acts, *363 and have neglected, under the act of 1794, to endeavour to set aside the grant of the plaintiffs, but have waited until the grantee and his sons are dead, who could have thrown a light on this subject, and explained, satisfactorily perhaps, how they came possessed of the grant; I say, their dilatory conduct raises a distant presumption, that all is not right on their part, and they do not deserve the countenance or protection- of this Court.
The last point I shall consider is, whether, when a grant is found in the possession of a plaintiff, the defendant may call on the plaintiff to show how he come by his grant, and whether he has paid the purchase money for the same ? 1 believe if this doctrine were to prevail, that very-few of the descendants of those who have come into possession of their lands, after the death of the original grantee, could furnish such proof. It would not be unlike calling upon a man to prove the payment of a debt, although he held* the receipt in his own hands. Does not a strong-presumption attach immediately to the production of such a receipt, or of a grarit that all the pre-requisitions have been duly and legally complied with ? Certainly it does; and which nothing but the most positive proof on the other hand could overset or destroy.
The account which Mr. Bremar gives of the transaction, it must be remembered, must be received with great caution; for, first,he was charg *364 'mS a Person with fraud after he was dead, and after a lapse of twenty odd years: 2d, he was . # swearing in exculpation of himself; for he, being fceeper 0f the grant, was violating his public trust, since he was most positively forbid parting with the grant, until the purchase money was paid into the public treasury. (See A. A. 3787.) If then a man, after having been in possession of a grant to himself, or his ancestor, and for such a length of time, could have it rendered void by such testimony; no grant in the state, of the age of this, and where the grantee and all his sons are dead, could,! apprehend, stand the scrutiny. I am, therefore, decidedly of opinion, as I was at the trial, that the plaintiff ought to recover, and, therefore, there ought to be anew trial.
ColcncJc, JSrott, and CJheves, J. concurred.
Gantt', and Johnson, J. dissented.